## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

JEUNESSE, LLC, MARKET Q, INC.,
WENDY R. LEWIS, and OGALE
"RANDY" RAY,

          Plaintiffs,

v.                                 Case No:  6:15-cv-131-Orl-28DAB

LIFEWAVE, INC.,

          Defendant.

## ORDER

Plaintiffs move for a preliminary injunction against Defendant, LifeWave, Inc., alleging that LifeWave is disseminating false statements that injure Plaintiffs. (Mot. Prelim. Inj., Doc. 5). I held a hearing on the motion on February 25, 2015. (See Mins., Doc. 13). After considering the motion, LifeWave's response (Doc. 10), the evidence submitted by both sides, (Exs. A-E to Mot. Prelim. Inj.; Schmidt Aff., Doc. 11, and accompanying exhibits; Notice of Filing Docs. Referenced at Hr'g, Doc. 14),[1] and arguments at the hearing, I conclude that Plaintiffs have not established entitlement to a preliminary injunction and that the motion must be denied.

---

[1] The parties submitted several affidavits in relation to this motion.  Plaintiffs submitted the following affidavits: Robert Dawson, the Chief Legal Officer of Jeunesse, (Ex. A to Mot. Prelim. Inj., Doc. 5, at 18-20); Ogale "Randy" Ray, a co-founder of Jeunesse and Market Q, (Ex. B to Mot. Prelim. Inj., Doc. 5, at 21-22); and Wendy Lewis, a co-founder of Jeunesse and Market Q, (Ex. C to Mot. Prelim. Inj., Doc. 5, at 23-24).  LifeWave submitted the affidavit of David Schmidt, the founder and Chief Executive Officer of LifeWave.  (Doc. 11).

I.    **Background**

LifeWave and Plaintiff Jeunesse, LLC "are competitors in the multi-level marketing

. . . industry."[2]  (Schmidt Aff. ¶ 4).  The companies are engaged in the marketing and sale

of cosmetic and health products.  (Id.; Compl., Doc. 1, ¶ 14).  Plaintiff Market Q, Inc. is a

related company.  According to LifeWave, Market Q is a software support company that

once worked with LifeWave.  (Schmidt Aff. ¶¶ 32-33).  Plaintiffs Wendy Lewis and Ogale

"Randy" Ray are the co-founders of Jeunesse and Market Q.  (Ray Aff. ¶ 3; Lewis Aff. ¶ 3).

On January 12, 2015, LifeWave hosted a webinar for its leaders in Denmark during

which representatives of LifeWave discussed Plaintiffs.  (See Webinar Tr., Ex. D to Mot.

Prelim. Inj., Doc. 5, at 25-62; Schmidt Aff. ¶ 3).  In the webinar, representatives of LifeWave

stated that the purpose of the webinar was to give information to LifeWave leaders about

Jeunesse to counter Jeunesse's attacks.  (Webinar Tr. at 26).  Specifically, LifeWave

representatives told webinar participants that Jeunesse was named a defendant in a patent

infringement lawsuit in 2012, (id. at 27-28); that Jeunesse makes untrue and illegal claims

about its products, (id. at 29-32); that Jeunesse's products are on the market illegally and

use illegal nutrients, (id. at 28-31); that there is no evidence that Jeunesse's claims are

supported by clinical studies, (id. at 31); that Jeunesse's business structure is illegal, (id.

at 34-35); that LifeWave was planning to complain to regulatory authorities about

Jeunesse, (id. at 32); and that Ray and Lewis had committed fraud against consumers in

the past, (id. at 32-33).

Plaintiffs also allege in their Complaint that LifeWave is distributing documents that

---

[2] As multi-level marketing companies, they are structured to recruit large networks
of individual distributors to sell their products.  (Mot. Prelim. Inj. at 3; Dawson Aff. ¶ 8;
Schmidt Aff. ¶ 4).

make similar allegations, (Compl. ¶ 26), but Plaintiffs have not presented specific evidence of such documents. Finally, Plaintiffs contend that LifeWave's conduct violates an anti-disparagement clause in a contract between Market Q and LifeWave. (Id. ¶¶ 93-102; see also Termination Agreement, Ex. A to Compl., Doc. 1-1).

According to David Schmidt, the founder and CEO of LifeWave, the webinar was actually a team briefing with the company's leading distributors in Denmark to address illegal and unfair tactics used by Jeunesse. (Schmidt Aff. ¶ 15). The briefing "was given only once and was not open to the general public or anyone outside of LifeWave." (Id.). Schmidt avers that LifeWave never posted or re-broadcast this information. (Id. ¶ 20). According to Schmidt, the statements about Jeunesse in the webinar were meant to counteract Jeunesse's attacks and unethical practices. (Id. ¶ 14).

After learning about the webinar, Plaintiffs sued LifeWave, bringing ten counts. Plaintiffs' claims are based on the statements made by LifeWave in its webinar and printed materials.

## II.     Motion for Preliminary Injunction

Plaintiffs request a preliminary injunction on their counts of tortious interference with advantageous business relationships (Count II), violations of the Florida Deceptive and Unfair Trade Practices Act (Count III), violations of the Lanham Act (Count IV), unfair competition (Count VI), trade libel (Count VII), and breach of contract (Count X). (Mot. Prelim. Inj.). Plaintiffs seek an injunction forbidding LifeWave from publishing false and defamatory information regarding Jeunesse, Lewis, and Ray to distributors or other third parties; directing LifeWave to remove defamatory information regarding Jeunesse from all media; requiring LifeWave to cease use of the webinar and related materials; and requiring

LifeWave to issue a retraction and use its best efforts to remove defamatory information from the public domain. (Id. at 15-16).

At the hearing on the motion, Plaintiffs introduced evidence to contradict some of the claims made in the webinar. This evidence included documentation reflecting that at least some of their products are registered for sale, (Ex. B to Notice of Filing, Doc. 14, at 9-28), and the docket of the patent infringement lawsuit against Jeunesse indicating that the case is no longer active, (Ex. C to Notice of Filing, Doc. 14, at 29-35).

III.   Analysis

"[T]he four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted . . . are whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). "'[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)).

A.   Substantial Likelihood of Success on the Merits

Plaintiffs seek preliminary injunctive relief on six counts. While the elements for these causes of action vary, all require Plaintiffs to prove that they were damaged as the result of LifeWave's speech. See Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (stating that the elements of tortious interference with a business relationship include "damage to the plaintiff as a result of" interference with a business

4

relationship); Dolphin LLC v. WCI Cmtys., Inc., 715 F.3d 1243, 1250 (11th Cir. 2013) (citing Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)) (stating that the plaintiff must prove causation and actual damages in a claim under the Florida Deceptive and Unfair Trade Practices Act); Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002) (requiring that to establish a likelihood of success on a Lanham Act claim, the plaintiff must "ha[ve] been—or [be] likely to be—injured as a result of the false advertising"); Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc., 785 F.2d 897, 914 (11th Cir. 1986) (stating that plaintiffs must establish a likelihood of customer confusion to succeed on a claim for unfair competition under Florida common law); Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006) (requiring the plaintiff to establish that "special damages are proximately caused as a result of the published falsehood" to succeed on a claim of trade libel); Friedman v. N.Y. Life Ins. Co., 985 So. 2d 56, 58 (Fla. 4th DCA 2008) (requiring plaintiff to establish damages on a breach of contract claim).

Plaintiffs have not submitted evidence—other than Dawson's conclusory statements in his affidavit—that they have suffered damages as a result of LifeWave's conduct. When asked about this issue at the hearing, Plaintiffs' counsel reported that she believes they will eventually be able to show damages that were caused by the webinar but that she did not have any such evidence at the hearing. For the purposes of a preliminary injunction, Plaintiffs have not shown that their customers and distributors are even aware of the webinar, and they have not established that their customers are confused or have changed their behavior as a result of the webinar. To the extent Plaintiffs contend that customers complained to Jeunesse, they have not established that these complaints were caused by

LifeWave's speech.  In sum, Plaintiffs have not shown that they are substantially likely to succeed on the merits of any of their claims.

### B.    Irreparable Injury Without Injunctive Relief

Even if Plaintiffs had established a substantial likelihood of success on the merits of their claims, at this stage they have not shown that they will suffer irreparable injury without injunctive relief.  "A showing of irreparable injury is 'the sine qua non of injunctive relief.'" Siegel, 234 F.3d at 1176 (quoting Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990)).  "[T]he asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'"  Id. (quoting City of Jacksonville, 896 F.2d at 1285).

For the purposes of obtaining a preliminary injunction, Plaintiffs have not established that they will suffer actual and imminent irreparable injury.  As noted above, Plaintiffs have not submitted evidence indicating that their reputation or goodwill has been diminished due to LifeWave's webinar.  Plaintiffs' assertions of injury are supported only with conclusory allegations, not with specific evidence.  Accordingly, Plaintiffs have not shown that they will suffer irreparable injury without injunctive relief.

### C.    Other Factors

Because Plaintiffs have not met their burden of establishing the required elements of a substantial likelihood of success on the merits or irreparable injury without injunctive relief, Plaintiffs cannot obtain a preliminary injunction.  The Court need not consider the other factors in the analysis.

IV.    **Conclusion**

Because Plaintiffs have not shown that they are entitled to a preliminary injunction,

their motion must be denied.  Accordingly, it is hereby **ORDERED** and **ADJUDGED** that

Plaintiffs' Motion for Preliminary Injunction (Doc. 5) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on February 27, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

7